# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| BELINDA POWERS, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>MEREDITH CORPORATION,<br><br>    Defendant. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>(JURY TRIAL DEMANDED) |

Plaintiff Belinda Powers ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to herself and her counsel, which are based on personal knowledge.

## INTRODUCTION

1.  Unsatisfied with publishing and advertising revenue alone, Defendant Meredith Corporation ("Meredith") sold and rented, and continues to sell and rent, subscriber mailing lists containing Plaintiff's and the other Class members' names and likenesses, along with other highly sensitive personal information, to various parties on the open market, including to data miners, data aggregators, data appenders, data cooperatives, list brokers, aggressive marketing companies, and various other third parties. The lists Meredith sold and rented identified, by name, address, and other personal attributes, Plaintiff and every other South Dakota subscriber to its various magazine publications, including *Better Home and Gardens* to which Plaintiff subscribed. Meredith's monetization of Plaintiff's and its other South Dakota subscribers' names and likenesses in this way was done in direct violation of South Dakota's Right of Publicity Law, S.D. Codified Laws § 21-64-1, *et seq.* (the "SDRPL").

2.  Documented evidence confirms these facts. For example, Meredith, either directly or through one or more intermediary acting on its behalf and at its direction (including through NextMark and/or one or more "list manager" and/or "list broker"), and during the time

period relevant to this action, knowingly, intentionally, and willfully sold and rented to various parties the list titled "Better Homes and Gardens Mailing List", which contains the full name, home address, and title of the publication subscribed to (collectively "Personal Reading Information") – as well as myriad other personally identifying attributes and demographic information such as gender, age, and income—of each of the 3,601,481 active U.S. subscribers to *Better Homes and Gardens* magazine (including Plaintiff and each member of the Class) at a base price of "$115.00/M [per thousand]," (i.e., 11.5 cents apiece), as shown in the screenshot below from list broker NextMark, Inc.'s website:



*See* **Exhibit A** hereto.

3.      Meredith's practices of knowingly selling, to any member of the general public interested in purchasing, mailing lists on which each of its subscribers is identified is not limited to *Better Homes & Gardens* magazine.  Meredith, either directly or through one or more intermediary acting on its behalf and at its direction (including through NextMark and/or one or more "list manager" and/or "list broker"), also sells and offers to sell the mailing list titled "Meredith Database – Masterfile Mailing List", which contains the Personal Reading Information of all 14,989,713 active U.S. subscribers to all of Meredith's various publications, among them Plaintiff and each member of the Class, at a base price of "$115.00/M [per thousand]," (i.e., 11.5 cents apiece), as shown in pertinent part in the screenshot below from list broker NextMark, Inc.'s website:



*See* **Exhibit B** hereto.

4. The SDRPL clearly prohibits what Meredith has done. The SDRPL states, in pertinent part:

> No person may use any aspect of a personality's right of publicity for a commercial purpose during the personality's lifetime or for seventy years after the death of the personality without the express written consent of the personality, or if the personality is deceased without the express written consent of the personality's next of kin or other person or entity that owns the right of publicity.

S.D. Codified Laws § 21-64-2. Meredith directly violated the SDRPL by knowingly, willfully, and intentionally using the names and likenesses of Plaintiff and Class members, each of whom has commercial value in their names and likenesses, "in connection with a product, merchandise, goods, service, or commercial activity" – namely, the subscriber mailing lists that Meredith sells and rents which identify Plaintiff and the other Class members as subscribers of its publications, without any of these individuals' prior express written consent.

5. Meredith's practices of monetizing its subscribers' names and likenesses for commercial purposes without authorization is not only unlawful, it is also dangerous because it allows any member of the public willing to purchase or rent this data to target particular subscribers, including vulnerable members of society, using their identities, interests and other demographic data.

6. So while Meredith profits handsomely from the use of its customers' names, likenesses, and other personally identifying attributes in this way, it does so at the expense of its South Dakota customers' statutory rights of publicity. Accordingly, Plaintiff brings this Class Action Complaint against Meredith for its knowing, intentional, willful, and plainly unlawful use of its customers' names and likenesses in reckless disregard of their statutorily protected rights under the SDRPL.

## PARTIES

7. Plaintiff Belinda Powers is, and at all times relevant to this action has been, a living, natural person and a domiciled resident and citizen of South Dakota. Plaintiff subscribed, including during the time period relevant to this action, to Meredith's *Better Home and Gardens*

magazine while residing in, a citizen of, and physically present in South Dakota.

8. Defendant Meredith Corporation is an Iowa corporation with its headquarters and principal place of business in Des Moines, Iowa. Meredith is registered to do and does business throughout the entire United States. Meredith is the publisher of, among others, the magazines *Better Homes and Gardens, Living the Country Life, Entertainment Weekly, Food & Wine, Health, Midwest Living, People, Parents, Real Simple, Shape, Southern Living, Travel + Leisure, Wood, FamilyFun, Rachel Ray in Season*, and *InStyle*.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

10. The Court has personal jurisdiction over Meredith because Meredith maintains its corporate headquarters and principal place of business in New York, New York.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Meredith is subject to personal jurisdiction in this judicial District, because Meredith resides in this judicial District, and because a substantial part of the events giving rise to Plaintiff's claims took place within this judicial District.

## FACTUAL BACKGROUND

### *South Dakota's Right of Publicity Law*

12. Recognizing the need to protect its citizens' rights of publicity, the South Dakota legislature enacted the SDRPL to establish as a matter of law that each resident of South Dakota has the right of publicity in his or her name and likeness.

13. The SDRPL prohibits companies like Meredith from, *inter alia*, using any aspect of an individual's name or likeness in connection with a product, merchandise, good, service, or commercial activity. *See*. Specifically, the SDRPL states, in pertinent part:

No person may use any aspect of a personality's right of publicity

5

>for a commercial purpose during the personality's lifetime or for seventy years after the death of the personality without the express written consent of the personality, or if the personality is deceased without the express written consent of the personality's next of kin or other person or entity that owns the right of publicity.

S.D. Codified Laws § 21-64-2. The term "personality" means a "person who is a citizen of this state, or who died domiciled in this state whose name, voice, signature, photograph, image, likeness, distinctive appearance, gesture, or mannerism identifies a specific person and has commercial value, whether or not the person uses or authorizes the use of the person's rights of publicity for a commercial purpose that serves to identify a specific person." *See id.* § 21-64-1(2). The term "right of publicity" means "a personality's property interest in the personality's name, voice, signature, photograph, image, likeness, distinctive appearance, gesture, or mannerism." *Id.* § 21-64-1(3). And the term "commercial purpose" is defined as, *inter alia*, "the use of an aspect of a personality's right of publicity in connection with a product, merchandise, goods, service, or commercial activity[.]" *Id.* § 21-64-1(1).

14. The SDRPL provides for both injunctive relief and damages (actual or statutory, whichever is greater) to a prevailing plaintiff. *See id.* § 21-64-5. With respect to statutory damages, the statute provides for "[d]amages in the amount of one thousand dollars," subject to trebling to $3,000.00 if the court finds a violation "was knowing, willful, or intentional[.]" *See id.* § 21-64-5(4).

15. Despite the fact that thousands of South Dakota residents subscribe to Meredith's various publications, Meredith disregarded its legal responsibilities to these individuals by selling and renting on the open market subscriber mailing lists that contained, *inter alia*, all of its South Dakota customers' commercially valuable names and likenesses, and thus their "personalities," without their express written consent, in direct violation of the SDRPL.

***Meredith Unlawfully Sells Mailing Lists Containing its South Dakota Customers' Names and Likenesses, as well as their Addresses, and Other Personal Reading Information***

16. Meredith maintains a vast digital database comprised of its customers' information, including their names, addresses, likenesses, and various other forms of personally identifying and highly sensitive Personal Reading Information.

17. Meredith, either directly or through one or more intermediary acting on its behalf and at its direction (including through NextMark and/or one or more "list manager" and/or "list broker"), knowingly, intentionally, and willfully sold and rented during the relevant time period, and continues to sell and rent to this day, lists on which its customers' names, addresses, and other Personal Reading Information appear. Meredith has sold and continues to sell and rent these lists on the open market to anyone willing to pay for them, including on a regular basis to data miners, aggregators, appenders, and cooperatives, aggressive marketing companies, and other businesses. The name and address (among other personally identifying attributes) of each subscriber appears on the lists that Meredith has sold and rented (and continues to sell and rent), and the lists identify each such person as having purchased a subscription(s) to a particular magazine(s) from Meredith.

18. As a result of Meredith's data compiling and sales practices, any member of the public can purchase or rent subscriber mailing lists from Meredith on which Plaintiff's and the other Class members' names and likenesses appear. Meredith's practices of selling and renting mailing lists in connection with its subscribers' names, likenesses, and other personally identifying attributes in this way puts these consumers, especially the more vulnerable members of society, at risk of serious harm from scammers.

19. Meredith does not seek its customers' prior express written consent to any of these practices and its customers remain unaware that their names and other personally identifying attributes, including their addresses and other sensitive Personal Reading Information (including information identifying the particular publication to which each of them subscribed), are used by Meredith in connection with the subscriber mailing lists that the company has sold and rented (and continues to sell and rent) on the open market to any member of the public interested in purchasing the lists or these rental services.

20. Consumers can subscribe to Meredith's publications through numerous media outlets, including the Internet, telephone, or traditional mail. Regardless of how the consumer subscribes, Meredith uniformly fails to obtain express written consent from—or even provide effective notice to—its customers before engaging in the practices described herein.

21. By and through these actions, Meredith has intentionally, knowingly, and willfully used Plaintiff's and numerous other South Dakota residents' "names" and "likenesses," which have commercial value, "in connection with . . . product[s], merchandise, goods, service[s], [and] commercial activit[ies]" – i.e., both the subscriber mailing lists Meredith sold and rented to third parties and its practices of selling and renting such subscriber mailing lists – without any of their "express written consent" – in direct violation of the SDRPL. *See* S.D. Codified Laws § 21-64-2.

## CLASS ACTION ALLEGATIONS

22. Plaintiff seeks to represent a class defined as:

> All South Dakota residents who, at any point in the applicable statutory period, had their names appear on or in a mailing list sold or rented by or on behalf of Meredith (the "Class").

23. Members of the Class are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class number in the thousands. The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the records of Defendant.

24. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to: (a) whether the subscriber mailing lists that Meredith sold and rented, and its practices of selling and renting such lists, on the open market to various third parties are "products, merchandise, goods, services, or commercial activities" within the meaning of the SDRPL; (b) whether Meredith used Plaintiff's and the Class's "name[s]" or "likeness[es]", and whether those names or likenesses identify a specific person and have commercial value, and thus constitute "personalities," in connection with the subscriber mailing lists that it sells and rents; (c) whether Meredith obtained prior "express written consent" from Plaintiff and Class members to use their "rights of publicity" in connection with the sale and rental of such subscriber mailing lists and/or its practices of selling and renting such lists; (d) whether Meredith's practices of selling and

renting such subscriber mailing lists violated the SDRPL; (e) whether Meredith's violations of the SDRPL were knowing, intentional, or willful; and (f) the appropriate amount of damages to which Plaintiff and Class members are entitled as a result of Meredith's violations of the SDRPL.

25. The claim of the named Plaintiff is typical of the claims of Class members in that the named Plaintiff and the Class were injured and sustained damages by Defendant's uniform wrongful conduct, based upon Defendant's practices of using Plaintiff's and Class members' names, likenesses, and other personally identifying attributes in connection with subscriber mailing lists and its sales and rentals of subscriber mailing lists sold to third parties on the open market.

26. Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously. The interests of Class members will be fairly and adequately protected by Plaintiff and her counsel.

27. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of such issues.

**CLAIM FOR RELIEF**
**Violation of the South Dakota Right of Publicity Law, S.D. Codified Laws § 21-64-1,** *et seq.*
**(By Plaintiff on Behalf of Herself and the Class)**

28. Plaintiff repeats and incorporates herein the allegations in the foregoing paragraphs.

29. Plaintiff brings this claim individually and on behalf of members of the above-defined Class against Defendant.

30. "Belinda Powers," which Meredith used on the subscriber mailing lists that it has sold and rented (and continues to sell and rent), is the "name" that specifically identifies Plaintiff. *See* S.D. Codified Laws § 21-64-1(2). Plaintiff is a person and a citizen of the state of South Dakota whose name and likeness have commercial value; Plaintiff is thus a "personality" within the meaning of the SDRPL. *See id.* § 21-64-1(2).

31. Likewise, each of the Class members is a citizen of the state of South Dakota whose name and likeness have commercial value; each member of the Class is thus a "personality" within the meaning of the SDRPL. *See id.*

32. Plaintiff and each class member have a "right of publicity," a property interest, in their "name[s]" and "likeness[es]" within the meaning of the SDRPL. *See id.* § 21-64-1(3).

33. Meredith is a corporation and thus a juridical "person" within the meaning of the SDRPL. *See* S.D. Codified Laws § 21-64-2.

34. Plaintiff subscribed to Meredith's *Better Home and Gardens* magazine. Each member of the Class likewise subscribed to one or more Meredith publications.

35. At no time before or at the time Plaintiff purchased a subscription to *Better Home and Gardens* magazine did Meredith notify Plaintiff that it would use her "property interest in [her] name . . . [or] likeness" in connection with "a product, merchandise, goods, service, or commercial activity" by using her name, likeness, and other personally identifying attributes (including home address and title of the Meredith publication subscribed to—as well as myriad other personal and demographic information such as ge gender, age, and income) on or in connection with the subscriber mailing lists that it sold and rented. *See* S.D. Codified Laws §§ 21-64-1 & 21-64-1. Plaintiff has never provided "express written consent" to Meredith using her

"property interest in [her] name . . . [or] likeness" for "commercial purposes" in this way. *See id.*

36. Meredith likewise failed to notify any of its other subscribers, including the members of the Class, that it would use their "property interest[s] in [their] name[s] . . . [or] likeness[es]" in connection with "a product, merchandise, goods, service, or commercial activity" by using their names, likenesses, and other personally identifying attributes (including home addresses and titles of the Meredith publications subscribed to—as well as myriad other personal and demographic information such as gender, age, and income) on or in connection with the subscriber mailing lists that it sold and rented. *See id.* §§ 21-64-1 & 21-64-1. And none of the members of the Class provided their "express written consent" to Meredith using their "property interest[s] in [their] name[s] . . . [or] likeness[es]" for "commercial purposes" in this way. *See id.*

37. After Plaintiff subscribed to *Better Home and Gardens* from Meredith, and during the relevant statutory period, Meredith, either directly or through one or more intermediary acting on its behalf and at its direction (including through NextMark and/or one or more "list manager" and/or "list broker"), sold and rented mailing lists containing Plaintiff's name, likeness, and other personally identifying attributes (including identifying and highly sensitive Personal Reading Information, which, *inter alia*, identified her as an individual to whom Meredith had sold a *Better Home and Gardens* subscription) to various third parties, including to data aggregators, data appenders, data cooperatives, and others, without first obtaining Plaintiff's express written consent or even giving her prior notice of its use of her name, likeness, and other personally identifying attributes in this way.

38. Likewise, during the statutory period relevant to this action, Meredith sold and rented mailing lists containing the names and likenesses of the members of the Class (among other identifying and highly sensitive Personal Reading Information) to various third parties, including to data aggregators, data appenders, data cooperatives, and others, without first obtaining express written consent to these practices from, or even providing prior notice to, any of these individuals.

39. Significant commercial value exists in the aspects of Plaintiff's and Class members' likenesses that Meredith used and continues to use in connection with its sales and

rentals of subscriber mailing lists.

40. Meredith's sale and rental of subscriber mailing lists containing Plaintiff's and Class members' names and likenesses, on the open market to anyone interested in purchasing them, constituted the use of the "an[] aspect of" the "right[s] of publicity" of Plaintiff and Class members for "commercial purposes" within the meaning of the SDRPL. *See* S.D. Codified Laws § 21-64-2.

41. Meredith failed to obtain the "express written consent" of Plaintiff or any Class member prior to using "an[] aspect of [their] right[s] of publicity for . . . commercial purpose[s]" in the manner alleged herein. *See id.*

42. By and through these actions, Meredith used "an[] aspect of" Plaintiffs' and Class members' "right[s] of publicity for a commercial purpose . . . without [their] express written consent," in direct violation of the SDRPL. *See id.*

43. Meredith's nonconsensual use of Plaintiff's and Class members' rights of publicity for commercial purposes did not constitute "the use of [any] personality's name . . . [or] likeness" in any "[l]iterary work," "[m]aterial that has political or newsworthy value," or an "[a]dvertisement of commercial announcement" for any use permitted by § 21-64-6, nor did it constitute "the use of a[ny] personality's name, voice, signature, photograph, image, likeness, distinctive appearance, gesture, or mannerism in connection with a broadcast or reporting of an event or a topic of general or public interest[.]" *See id.* §§ 21-64-6 & 21-64-8.

44. Meredith knowingly, intentionally, and willfully used Plaintiff's and the other Class members' rights of publicity for commercial purposes in connection with the subject subscriber mailing lists and its sales and rentals of such lists in the manner alleged herein. Indeed, during the time period relevant to this action, Meredith, either directly or through one or more intermediary acting on its behalf and at its direction (including through NextMark and/or one or more "list manager" and/or "list broker"), directed and oversaw the compilation and assembly of the subject subscriber mailing lists from its customer database, the use of Plaintiff's and Class members' names and likenesses in connection with such subscriber mailing lists, the advertising

of such subscriber mailing lists and the ability to rent such lists on the open market, and the actual sales and rentals of such subscriber mailing lists to various third parties. Plaintiff is informed and believes that Meredith reaped significant monetary profits through its sales and rentals of subscriber mailing lists on or in which Plaintiff's and the other Class members' names and likenesses appeared. Plaintiff is also informed and believes that Meredith was aware of the existence of and the rights afforded under South Dakota's SDRPL and the various other states' and territories' right of publicity statutes, and understood and appreciated that its conduct, as alleged herein, was and continues to be undertaken in violation of said statutes. Meredith has nonetheless refused to cease using its subscribers', including its South Dakota subscribers', names and likenesses for commercial purposes without their express written consent in the manner described herein.

45. Plaintiff and the members of the Class have been injured from the violations of their rights of publicity in the manner described herein. On behalf of herself and the Class, Plaintiff seeks: (1) statutory damages of $1,000.00 per violation of the SDRPL (or of $3,000.00 per violation of the SDRPL that the Court finds was knowing, willful or intentional), pursuant to S.D. Codified Laws § 21-64-5(2) & (4); (2) a declaration that Defendant's conduct described herein violates the SDRPL; (3) an injunction prohibiting Defendant from further using Plaintiff's and Class members' rights of publicity in connection with the subscriber mailing lists that it sells and rents, and requiring Defendant to obtain prior express written consent from South Dakota customers prior to doing so in the future, pursuant to S.D. Codified Laws § 21-64-5(1); and (4) costs and reasonable attorneys' fees to Plaintiff's counsel.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks a judgment against Defendant as follows:

  A. For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

      B.      For a declaration that Defendant's conduct described herein violates the SDRPL;

      C.      For an order finding in favor of Plaintiff and the Class on the count asserted herein;

      D.      For an award of statutory damages of $1,000.00 per violation of the SDRPL (or of $3,000.00 per violation of the SDRPL that the Court finds was knowing, willful or intentional), pursuant to S.D. Codified Laws § 21-64-5(2) & (4);

      E.      For an an injunction prohibiting Defendant from further using Plaintiff's and Class members' rights of publicity in connection with the subscriber mailing lists that it sells and rents, and requiring Defendant to obtain prior express written consent from South Dakota customers prior to doing so in the future, pursuant to S.D. Codified Laws § 21-64-5(1);

      F.      For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit; and

      G.      For prejudgment interest on all amounts awarded.

## JURY DEMAND

Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated: November 8, 2021                Respectfully submitted,

/s/ J. Barton Goplerud
J. Barton Goplerud, AT0002983
Gary W. Kendell, AT0004203
SHINDLER, ANDERSON,
GOPLERUD & WEESE, P.C.
5015 Grand Ridge Drive
West Des Moines, IA 50265
Tel: (515) 223-4567
FaX: (515) 223-8887
Email: goplerud@sagwlaw.com
        kendell@sagwlaw.com

*Local Counsel for Plaintiff and the Putative Class*

Arun G. Ravindran*
aravindran@hedinhall.com

Frank S. Hedin\*
fhedin@hedinhall.com
HEDIN HALL LLP
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Tel: (305) 357-2107
Fax: (305) 200-8801

\* *Pro Hac Vice* Application Forthcoming

*Counsel for Plaintiff and the Putative Class*